**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**NEWNAN DIVISION**

| | | |
|---|---|---|
| ROSA MAE PRITCHETT | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL CASE NO. |
| v. | : | 3:15-cv-00197-TCB-RGV |
| | : | |
| PAUL MASON AND ASSOCIATES, INC. *doing business as* CREDITORS BANKRUPTCY SERVICE, | : | |
| | : | |
| Defendant. | : | |

**MAGISTRATE JUDGE'S NON-FINAL REPORT AND RECOMMENDATION**

Plaintiff Rosa Mae Pritchett ("Pritchett") filed this action against defendant Paul Mason and Associates, Inc., doing business as Creditors Bankruptcy Service ("CBS"), alleging that CBS violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., and 11 U.S.C. § 524. [Doc. 1].[1] CBS has moved for summary judgment. [Doc. 29]. Pritchett has also moved for summary judgment. [Doc. 32]. For the reasons that follow, it is **RECOMMENDED** that CBS's motion for summary judgment, [Doc. 29], be **GRANTED IN PART** and **DENIED IN PART**, that Pritchett's motion for summary judgment, [Doc. 32], be **DENIED**, and that

[1] The listed document and page numbers in citations to the record refer to the document and page numbers shown on the Adobe file reader linked to the Court's electronic filing database, CM/ECF, with the exception of Pritchett's deposition transcript, which is also cited according to the transcript page numbers.

Pritchett's claim for violation of the bankruptcy discharge injunction be **REFERRED** to the United States Bankruptcy Court for the Northern District of Georgia.

## I. PROCEDURAL AND FACTUAL BACKGROUND

### A. Preliminary Matters

"In this District, the process for separating disputed from undisputed material facts is governed by Local Rule 56.1(B)." Brandon v. Lockheed Martin Aeronautical Sys., 393 F. Supp. 2d 1341, 1347 (N.D. Ga. 2005), adopted at 1346. In compliance with Local Rule 56.1B, both parties have submitted statements of undisputed material facts, [Doc. 29-6; Doc. 33], and responses thereto, [Doc. 35 at 1-17; Doc. 40], Pritchett has also submitted a statement of disputed material facts, [Doc. 35 at 17-23], to which CBS has responded, [Doc. 39]. CBS also submitted its own statement of disputed material facts that it contends preclude summary judgment. [Doc. 40 at 7-16].

The Court accepts as undisputed those facts which Pritchett admits or has failed to properly dispute or deny, see [Doc. 35 at 1-17, admitting or failing to properly dispute ¶¶ 2-25 and 32-49 of CBS's statement, Doc. 29-6]; see also [¶¶ 1, 3-33 of CBS's statement, Doc. 40 at 7-16],[2] as well as those facts which CBS admits or

[2] Pritchett did not file a separate response to CBS's statement of material disputed facts. [Doc. 40 at 7-16]. Thus, to the extent CBS's facts are not contradicted by Pritchett's statement of undisputed material facts, [Doc. 33], they are deemed admitted if "supported by some evidence," Vickers v. City of Moultrie, Civil Action

has failed to properly dispute or deny, see [Doc. 40, admitting or failing to properly dispute ¶¶ 3 and 6 and part of ¶¶ 1-2 and 5 of Pritchett's statement, Doc. 33]; see also [Doc. 39, admitting or failing to properly dispute ¶¶ 3 and 6 and part of ¶¶ 1-2 and 5 of Pritchett's statement, Doc. 35 at 17-23].[3] However, the Court has disregarded those facts that are not material, are supported by citation to a pleading

---

No. 7:13–CV–29 (HL), 2014 WL 3908629, at *2 (M.D. Ga. Aug. 11, 2014); see also Underwood v. City of Moultrie, Civil Action No. 7:13–CV–39 (HL), 2014 WL 4450383, at *2 (M.D. Ga. Sept. 10, 2014) (noting that although plaintiff did not respond to defendant's undisputed material facts "with relevant record citations that would dispute the[] facts," the facts would be deemed admitted only "to the extent the record provide[d] support for the[] facts"); Lindsay v. City of Moultrie, Civil Action No. 7:13–CV–57 (HL), 2014 WL 3928246, at *1 (M.D. Ga. Aug. 12, 2014) (citations omitted) ("[E]ven if the non-movant fails to offer adequate objections under Local Rule 56, a court may not accept at face value the movant's depictions of the facts," but "must review the record to determine for itself whether the motion for summary judgment is supported by the evidence and that there is no genuine issue of material fact").

[3] As CBS points out, [Doc. 38 at 4-5], Pritchett has "denied" certain paragraphs of CBS's statement of undisputed material facts without citations to record evidence, see [Doc. 35 at 7 ¶¶ 21, 23, 25]. "Such denials are insufficient to create issues of material fact." Kerr v. McDonald's Corp., 333 F. Supp. 2d 1352, 1354 (N.D. Ga. 2004), aff'd, 427 F.3d 947 (11th Cir. 2005) (per curiam) (citation omitted); see also LR 56.1B(2)a(2), NDGa. Thus, the Court accepts as undisputed those facts which Pritchett fails to directly refute with concise responses supported by specific citations to evidence. See Boone v. City of McDonough, No. 1:12-cv-1036-WSD, 2013 WL 4670480, at *5 (N.D. Ga. Aug. 29, 2013), adopted at *5, aff'd, 571 F. App'x 746 (11th Cir. 2014) (per curiam) (unpublished) (citations omitted) (finding certain statement of facts undisputed where plaintiff "merely 'denie[d]' various paragraphs without directly refuting defendants' fact with 'concise responses supported by specific citations to evidence' that actually support her denial as required by Local Rule 56.1B(2)").

rather than to evidence, or are stated as issues or legal conclusions. See LR 56.1B(1)-(2), NDGa.

Furthermore, the facts will be construed in the light most favorable to the non-moving party, as required on a motion for summary judgment, Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Knight v. Baptist Hosp. of Miami, Inc., 330 F.3d 1313, 1316 (11th Cir. 2003) (per curiam) (citation omitted), and "the filing of cross-motions for summary judgment does not give rise to any presumption that no genuine issues of material fact exist," Glenn v. Brumby, 724 F. Supp. 2d 1284, 1295 (N.D. Ga. 2010), aff'd, 663 F.3d 1312 (11th Cir. 2011). "Rather, '[c]ross-motions must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law.'" Id. (alteration in original) (quoting Shaw Constructors v. ICF Kaiser Eng'rs, Inc., 395 F.3d 533, 538-39 (5th Cir. 2004)); see also Adega v. State Farm Fire & Cas. Ins. Co., No. 07-20696-CIV, 2009 WL 3387689, at *3 (S.D. Fla. Oct. 16, 2009) (citation omitted) ("When evaluating cross-motions for summary judgment, the Court analyzes each individual motion on its own merits and thus views the facts on each motion in the light most favorable to the respective nonmovant."). Thus, "the denial of one does not require the grant of another." Perez-Santiago v. Volusia Cty., No. 6:08-cv-1868-Orl-28KRS, 2010 WL 917872, at *2 (M.D. Fla. Mar. 11, 2010) (citation and

internal marks omitted). "Even where the parties file cross motions pursuant to Rule 56, summary judgment is inappropriate if disputes remain as to material facts." Id. (citations and internal marks omitted).[4]

**B. Factual and Procedural Background**

In mid-February 2009, Pritchett "ordered something," incurring a credit card charge in the amount of $280.27 owed to Seventh Avenue, Inc. ("Seventh Avenue"). [Doc. 29-1 (Pl.'s Dep.) at 67 p. 66; Doc. 31-1 at 100]. On January 19, 2010, Pritchett filed for Chapter 13 bankruptcy in the Unites States Bankruptcy Court for the Northern District of Georgia, hereinafter referred to as "2010 bankruptcy." [Doc. 31-1 at 19-75]. Pritchett scheduled the debt to Seventh Avenue and listed Seventh Avenue's address as 1112 7th Avenue, Monroe, Wisconsin. [Id. at 47]. On April 26, 2012, Pritchett's 2010 bankruptcy was dismissed for failure to make payments. [Doc. 29-1 at 29 p. 28; Doc. 29-4 at 14].

On May 9, 2012, Pritchett, with the assistance of counsel, again filed for Chapter 13 bankruptcy in the United States Bankruptcy Court for the Northern District of Georgia, hereinafter referred to as "2012 bankruptcy," and she listed her

[4] Accordingly, what follows is a summary of the undisputed material facts, and the Court will note those occasions in which Pritchett or CBS offer additional or conflicting factual statements that are supported by the evidence of record. J.D.P. v. Cherokee Cty., Ga. Sch. Dist., 735 F. Supp. 2d 1348, 1350 (N.D. Ga. 2010). Finally, the Court has taken additional facts from the pleadings and supporting exhibits in order to fully describe Pritchett's allegations.

prior 2010 bankruptcy in her petition. [Doc. 29-1 at 31 p. 30; Doc. 31-1 at 76-125; Doc. 29-3 at 1-2]. Pritchett scheduled a debt to Ginnys/Swiss Colony in the amount of "$0.00" with an incurred date of "02/18/2009" and a debt to Seventh Avenue in the amount of "$280.27" with an unknown incurred date, and she listed their addresses as 1112 7th Avenue, Monroe, Wisconsin. [Doc. 31-1 at 97, 100]. Ginnys/Swiss Colony is the corporate bankruptcy department for Seventh Avenue. [Doc. 29-1 at 91 p. 90; Doc. 29-3 at 110]. On or about June 8, 2012, CBS, on behalf of Seventh Avenue, filed proof of claim number 7-1 in the 2012 bankruptcy in the amount of $314.43. [Doc. 29-4 at 31-33]; see also [Doc. 1-1]. On July 21, 2015, Pritchett received a bankruptcy discharge after completing a confirmed Chapter 13 plan. [Doc. 29-4 at 35-39]; see also [Doc. 1-3; Doc. 32-3]. CBS was served with notice of the discharge of the debt owed to Seventh Avenue. [Doc. 1-3 at 3]; see also [Doc. 35 at 19 ¶ 6; Doc. 39 at 4 ¶ 6].

On September 1, 2015, and October 9, 2015, Pritchett received copies of her consumer reports as published by Equifax and Experian Information Solutions, Inc. ("Experian"), respectively, [Doc. 29-1 at 77-78 pp. 76-77; Doc. 1 at 5 ¶ 25, 6 ¶ 31], which she in turn sent to her attorney, [Doc. 29-1 at 79 p. 78]. The October 9, 2015, consumer report from Experian listed a debt in the amount of $209.00 to Seventh Avenue, despite the entry of the discharge order in Pritchett's 2012 bankruptcy. [Id.

at 87-88 pp. 86-87; Doc. 1 at 7 ¶ 32]. Pritchett did not take any steps to correct the error on her consumer credit report, and she did not notify Seventh Avenue or Ginnys/Swiss Colony of the error. [Doc. 29-1 at 94 p. 93].

On October 14, 2015, Pritchett, with the assistance of her attorney, again filed for Chapter 13 bankruptcy in the United States Bankruptcy Court for the Northern District of Georgia, hereinafter referred to as "2015 bankruptcy." [Doc. 29-3 at 9-54]. In the section of the petition requesting all prior bankruptcy cases within the last eight years, Pritchett listed the 2010 bankruptcy but failed to list the 2012 bankruptcy. [Id. at 10]. Pritchett scheduled Ginnys/Swiss Colony as an unsecured creditor for a debt in the amount of "$0.00" and a date incurred of "02/18/2009," and the debt was not marked as disputed. [Doc. 29-3 at 26; Doc. 29-1 at 92 p. 91]. Notice was issued to Ginnys/Swiss Colony, showing it as the creditor and failing to show the 2012 bankruptcy. [Doc. 29-3 at 51].[5]

On or about November 12, 2015, Seventh Avenue forwarded information related to Pritchett's 2015 bankruptcy to CBS. [Doc. 29-4 (Bennett Aff.) at 5 ¶ 12]. The information was then screened for accuracy and validity. [Id. at 5 ¶ 13]. On

[5] On October 22, 2015, Pritchett filed a complaint against Experian and Coweta Cities & County Employees Federal Credit Union. See [Doc. 29-3 at 55-66; Doc. 29-1 at 21-23 pp. 20-22]; see also Pritchett v. Experian Info. Sols., Inc., Civil Action No. 3:15-cv-00167-TCB, at [Doc. 1] (N.D. Ga. Oct. 22, 2015). Pritchett testified that she did not recall filing this prior action and that she has "never filed a lawsuit against anybody." [Doc. 29-1 at 22-23 pp. 21-22].

November 16, 2015, CBS, on behalf of Seventh Avenue, filed proof of claim number 2-1 in the 2015 bankruptcy. [Doc. 29-4 at 41-43]; see also [Doc. 1-4]. On December 2, 2015, Adam M. Goodman, Chapter 13 Trustee, filed an objection to confirmation of the plan and motion to dismiss because "[a]ll prior bankruptcy cases of [Pritchett], or pending related bankruptcy cases, may not have been disclosed," among other stated reasons. [Doc. 29-4 at 45-46]. On December 14, 2015, Pritchett filed an amendment to schedules in her 2015 bankruptcy, which showed the 2012 bankruptcy. [Id. at 49-58]. The amended schedules did not change the scheduling of Ginnys/Swiss Colony. [Id.].

On December 16, 2015, Pritchett filed this action against CBS, alleging CBS violated the FDCPA and 11 U.S.C. § 524, by filing a proof of claim in her 2015 bankruptcy case for a debt that was discharged in her 2012 bankruptcy case. [Doc. 1]; see also [Doc. 29-1 at 99-100 pp. 98-99]. After being "alerted to the possibility that an improper claim had been filed, CBS withdrew proof of claim no. 2-1" on December 22, 2015. [Doc. 29-4 at 5 ¶ 14]; see also [id. at 60]. CBS has moved for summary judgment, [Doc. 29], and Pritchett also has moved for summary judgment, [Doc. 32]. The pending motions, [Docs. 29 & 32], having been fully briefed, are ripe for ruling.

## II. SUMMARY JUDGMENT STANDARD

In deciding a motion for summary judgment, the Court views all evidence in the light most favorable to and draws all reasonable inferences in the favor of the non-moving party. Gray v. City of Jacksonville, 492 F. App'x 1, 3 (11th Cir. 2012) (per curiam) (unpublished) (citations omitted). "Summary judgment shall be granted if the movant shows that there is 'no genuine issue as to any material fact', such that the movant is entitled to judgment as a matter of law."[6] Jerome v. Barcelo Crestline, Inc., 507 F. App'x 861, 863 (11th Cir. 2013) (per curiam) (unpublished) (quoting Fed. R. Civ. P. 56(a)); see also Holmes v. Ga. ex rel. Strickland, 503 F. App'x 870, 872 (11th Cir. 2013) (per curiam) (unpublished) (citations omitted); Young v. FedEx Express, 432 F. App'x 915, 916 (11th Cir. 2011) (per curiam) (unpublished) (citation omitted).

The party moving for summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material facts, upon which the non-moving party must then submit specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Premier Assocs., Inc. v. EXL Polymers, Inc., No. 1:08-cv-3490-WSD, 2010 WL

[6] "A fact is material only if it might affect the outcome of the suit under governing law." Bostic v. Lauragina Prof'l Transp., LLC, No. CV 414–083, 2015 WL 3650731, at *2 (S.D. Ga. June 5, 2015) (citation omitted).

2838497, at *8 (N.D. Ga. July 19, 2010), aff'd in part, 507 F. App'x 831 (11th Cir. 2013) (unpublished) (citations omitted). "[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation[s] or denials of [her] pleading, but must set forth specific facts showing that there is a genuine issue for trial." Jackson v. B & L Disposal, Inc., 425 F. App'x 819, 820 (11th Cir. 2011) (per curiam) (unpublished) (first alteration in original) (citation and internal marks omitted); see also Shuler v. Ingram & Assocs., 441 F. App'x 712, 715 (11th Cir. 2011) (per curiam) (unpublished) (citation omitted); Bryant v. U.S. Steel Corp., 428 F. App'x 895, 897 (11th Cir. 2011) (per curiam) (unpublished) (citation omitted). "Speculation or conjecture cannot create a genuine issue of material fact." Shuler, 441 F. App'x at 715 (citation omitted); see also Howard v. Or. Television, Inc., 276 F. App'x 940, 941 (11th Cir. 2008) (per curiam) (unpublished) (citation omitted); Goodman v. Ga. Sw., 147 F. App'x 888, 891 (11th Cir. 2005) (per curiam) (unpublished) (citation and internal marks omitted) ("[A]ll reasonable inferences arising from the undisputed facts should be made in favor of the nonmovant, but an inference based on speculation and conjecture is not reasonable."). "Moreover, the non-moving party cannot create a genuine issue through evidence that is 'merely colorable' or 'not significantly probative.'" Morales v. Ga. Dep't of Human Res., 446 F. App'x 179, 181 (11th Cir. 2011) (per curiam) (unpublished) (citation omitted).

And, "the nonmoving party must do more than summarily deny the allegations or show that there is some metaphysical doubt as to the material facts." Everidge v. Wells Fargo Bank, N.A., CASE NOS.: 5:12-CV-497 (LJA), 2015 WL 5786738, at *11 (M.D. Ga. Sept. 29, 2015), aff'd, 654 F. App'x 479 (11th Cir. 2016) (per curiam) (unpublished) (citation and internal marks omitted). In addition, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment," Anyanwu v. Brumos Motor Cars, Inc., 496 F. App'x 943, 945-46 (11th Cir. 2012) (per curiam) (unpublished) (citation and internal marks omitted), and "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, summary judgment for the moving party is proper," Premier Assocs., Inc., 2010 WL 2838497, at *9 (alteration in original) (citation and internal marks omitted).

## III. DISCUSSION

### A. FDCPA

Pritchett alleges that CBS violated §§ 1692e(2), 1692e(5), and 1692f of the FDCPA by filing a proof of claim in the 2015 bankruptcy for a debt that was discharged in the 2012 bankruptcy. [Doc. 1 at 5 ¶ 23, 10 ¶¶ 49-52, 17-18 ¶¶ 90-93]. CBS moves for summary judgment as to Pritchett's FDCPA claim, asserting that she is "unable to establish an injury in fact as required by all matters heard before an

Article III tribunal," that CBS did not violate the FDCPA by filing a proof of claim for a discharged debt, and that even if CBS did violate the FDCPA, she has failed to show that she was actually harmed by the alleged violation. [Doc. 29-5 at 8-19; Doc. 38 at 12-14; Doc. 41 at 5-15]. Pritchett maintains that Eleventh Circuit precedent establishes that CBS's action in filing a proof of claim on a discharged debt violates the FDCPA and that she has actual damages and is entitled to statutory damages. [Doc. 34 at 8-13; Doc. 36 at 8-12, 19-20; Doc. 42 at 6-11]. The Court will address each argument.

**1. *Standing***

"As a preliminary matter, [Pritchett] ha[s] the burden to establish that [she] ha[s] standing to pursue [her] claims." In re ING Groep, N.V. Erisa Litig., 749 F. Supp. 2d 1338, 1345 (N.D. Ga. 2010) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)). "Because the standing question goes to the court's jurisdiction, it is a threshold question that must normally be reviewed prior to the consideration of substantive questions." In re Olympia Holding Corp., 88 F.3d 952, 959 n.13 (11th Cir. 1996) (citing Linda R.S. v. Richard D., 410 U.S. 614, 616 (1973)); see also Focus on the Family v. Pinellas Suncoast Transit Auth., 344 F.3d 1263, 1272 (11th Cir. 2003) (citing Nat'l Parks Conservation Ass'n. v. Norton, 324 F.3d 1229, 1242 (11th Cir. 2003); Fla. Ass'n of Rehab Facilities, Inc., v. Fla. Dep't of Health & Rehab. Servs., 225

F.3d 1208, 1227 n.14 (11th Cir. 2000)) (holding that standing must be addressed before other substantive issues "because it directly implicates federal subject matter jurisdiction"). CBS contends that Pritchett lacks Article III standing to bring this action because she "cannot establish injury-in-fact" as she "acknowledges she has suffered no real harm." [Doc. 29-5 at 11]. In response, Pritchett asserts that the FDCPA establishes substantive rights to be free from improper debt collection practices and that the invasion of these rights is sufficient to show standing. [Doc. 36 at 9-10]. For the reasons that follow, the Court finds that Pritchett has standing under Article III to bring the present action against CBS.

"To establish constitutional standing, [Pritchett] must demonstrate that [s]he suffered [an] injury in fact," In re ING Groep, N.V. Erisa Litig., 749 F. Supp. 2d at 1345 (citation omitted), which "is a low threshold," Ross v. Bank of Am., N.A. (USA), 524 F.3d 217, 222 (2d Cir. 2008). An injury in fact is defined as "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560 (footnote, citations, and internal marks omitted). In Spokeo, Inc. v. Robins, 136 S. Ct. 1540 (2016), a case relied upon by CBS, see [Doc. 29-5 at 10-11], the United States Supreme Court addressed the injury-in-fact requirement of Article III standing, explaining that a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to

the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." 136 S. Ct. at 1547 (citations omitted). The Supreme Court also reiterated in Spokeo that a plaintiff must "allege an injury that is both concrete and particularized," and a concrete injury "must actually exist," though it may be intangible,[7] while a particularized injury "must affect the plaintiff in a personal and individual way" as opposed to in some indefinite way in common with people generally. Id. at 1545, 1548 (emphasis, citation, and internal marks omitted).

CBS argues that "[w]ithout actual damages or a realistic threat thereof, there can be no injury-in-fact from a mere 'procedural violation,'" and that Pritchett thus "cannot establish injury-in-fact." [Doc. 29-5 at 11]. CBS's argument "equates 'injury in fact' or 'actual or imminent injury' with a claim for actual damages under the FDCPA." Thorne v. Accounts Receivable Mgmt., Inc., No. 11-22290-Civ, 2012 WL

---

[7] "In determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." Spokeo, 136 S. Ct. at 1549. That is, courts may first analyze common law to determine whether a type of harm "has a close relationship to a harm that has been traditionally regarded as providing a basis for a lawsuit[.]" Id. (citation omitted). Second, Congress may also identify and "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." Id. (alteration in original) (citation and internal marks omitted). Therefore, "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact," and "a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified." Id. (emphasis and citation omitted).

3108662, at *6 (S.D. Fla. July 24, 2012) (emphasis omitted). However, "[a]n injury-in fact, as required by Article III, 'may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing[.]'" Church v. Accretive Health, Inc., 654 F. App'x 990, 993 (11th Cir. 2016) (per curiam) (unpublished) (citations omitted). "The FDCPA . . . [is a] consumer protection statute[] that confer[s] on plaintiffs the right to be free from certain harassing and privacy-invading conduct," Manno v. Healthcare Revenue Recovery Grp., LLC, 289 F.R.D. 674, 682 (S.D. Fla. 2013), and the "FDCPA authorizes an aggrieved debtor to file suit for a debt collector's failure to comply with the Act," Church, 654 F. App'x at 994 (citing 15 U.S.C. § 1692k(a)); see also Thorne, 2012 WL 3108662, at *6 ("The FDCPA, expressly designed to protect consumers from unscrupulous debt collection practices, defines a legally protected interest of consumers against such practices, and a violation of the FDCPA's provisions invades that interest."). Pritchett "seeks to enforce a private right of action for injury to [her] statutory right to receive . . . [debt-collection attempts] free of false, deceptive, or misleading representations." Michael v. HOVG, LLC, Case No. 16-cv-62651-BLOOM/Valle, 2017 WL 129111, at *3 n.1 (S.D. Fla. Jan. 10, 2017) (finding alleged violation of §§ 1692e(10) and 1692f resulted in harm that Congress elevated to the status of a legally cognizable and concrete injury); see also [Doc. 1 at 5 ¶ 23, 10 ¶¶ 49-52, 17-18 ¶¶ 90-93; Doc. 36 at 12]. "While this injury may not have

resulted in tangible economic harm or physical harm that courts often expect, the Supreme Court has made clear an injury need not be tangible to be concrete." Church, 654 F. App'x at 995 (citing Spokeo, 136 S. Ct. at 1549; Havens Realty Corp. v. Coleman, 455 U.S. 363, 373 (1982)). "Rather this injury is one that Congress has elevated to the status of a legally cognizable injury through the FDCPA." Id. (footnote omitted) (finding violations of §§ 1692e(11) and 1692g(a)(1)-(5) results in a concrete injury); Michael, 2017 WL 129111 (finding the reasoning in Church applicable to violations under §§ 1692e(10) and 1692f under the FDCPA); see also In re Robinson, 554 B.R. 800, 809 (Bankr. W.D. La. 2016) (finding the plaintiff had standing to bring FDCPA claim where the creditor filed a time-barred claim in a Chapter 13 bankruptcy case, even in the absence of actual damages).[8] Thus, Pritchett has established Article III standing to assert her FDCPA claim against CBS.

---

[8] CBS argues that Church is inapplicable to the case at hand because the "FDCPA provides the specific right to the duty in *Church*," but the "issue here does not revolve around a statutory right, but rather one elevated by the judiciary." [Doc. 38 at 13]. However, contrary to CBS's contention, the Eleventh Circuit did not "elevate the status of an injury" in Crawford v. LVNV Funding LLC, 758 F.3d 1254, 1262 (11th Cir. 2014). [Doc. 38 at 13-14]. Rather, the Eleventh Circuit decided whether a creditor's filing of a time-barred claim in a Chapter 13 bankruptcy fell within conduct already prohibited by Congress in §§ 1692e and 1692f of the FDCPA. Crawford, 758 F.3d at 1262. Thus, CBS's argument is without merit.

### 2. *CBS's Bona Fide Error Defense*

In its motion for summary judgment, CBS asserts that any attempt to collect on the discharged debt was inadvertent and unintentional and that Pritchett's claim fails under the bona fide error defense afforded in the FDCPA. [Doc. 29-5 at 12-13]. Pritchett responds that "CBS fail[ed] to raise the 'bona fide error' defense anywhere in its responsive pleading and has therefore waived that defense." [Doc. 36 at 12]; see also [Doc. 35 at 8-11 ¶¶ 26-31].

Federal Rule of Civil Procedure 8(c) provides that a defendant is required to "affirmatively state any avoidance or affirmative defense" in its pleading. Fed. R. Civ. P. 8(c). "If a party fails to raise an affirmative defense in the pleadings, the party generally waives its right to raise the issue at trial." Bergquist v. Fidelity Info. Servs., Inc., 399 F. Supp. 2d 1320, 1325 (M.D. Fla. 2005), aff'd, 197 F. App'x 813 (11th Cir. 2006) (per curiam) (unpublished) (citing Hassan v. U.S. Postal Serv., 842 F.2d 260, 263 (11th Cir. 1988)). "'However, the liberal pleading rules established by the Federal Rules of Civil Procedure apply to the pleading of affirmative defenses. [Courts] must avoid hypertechnicality in pleading requirements and focus, instead, on enforcing the actual purpose of the rule,'" Nixon v. Life Ins. Co. of N. Am., 130 F. Supp. 2d 1279, 1287 (M.D. Ala. 2001) (alteration in original) (quoting Hassan, 842 F.2d at 263), which is "'to guarantee that the opposing party has notice of any

additional issue that may be raised at trial so that . . . she is prepared to properly litigate it.'" Mid-Continent Cas. Co. v. King, 552 F. Supp. 2d 1309, 1316 (N.D. Fla. 2008) (quoting Hassan, 842 F.2d at 263).

The "FDCPA affords a narrow carve-out to the general rule of strict liability, known as the 'bona fide error' defense." Owen v. I.C. Sys., Inc., 629 F.3d 1263, 1271 (11th Cir. 2011) (footnote omitted). Section 1692k(c) of the FDCPA provides:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c). "Bona fide error is an affirmative defense to an FDCPA claim and must be asserted in a defendant's answer or it is deemed to have been waived." Hoch v. Mid-Minn. Mgmt. Servs. Inc., Civil No. 15-2445 ADM/LIB, 2016 WL 386037, at *4 (D. Minn. Feb. 1, 2016) (citations omitted); see also Owen, 629 F.3d at 1271 (citation omitted) ("This bona fide error defense in § 1692k(c) is an affirmative defense[.]").

CBS asserts that it "affirmatively pled the [bona fide error] defense in its [a]mended [a]nswer" in its tenth defense, [Doc. 41 at 16]; see also [Doc. 38 at 11], which states that CBS "has acted in good faith at all times in its dealings with [Pritchett] and has not engaged in any intentional or willful misconduct nor has it

acted with malice or reckless indifference," [Doc. 14 at 4]. CBS further asserts that "[t]his defense accurately sets forth [its] intent to argue bona fide error." [Doc. 38 at 11]; see also [Doc. 41 at 17]. However, the Court disagrees. This defense in CBS's amended answer fails to reference the FDCPA or § 1692k(c) or even mention an error or maintenance of procedures adapted to avoid an error. See Roth v. Nationstar Mortg., LLC, Case No. 2:15-cv-783-FtM-29MRM, 2016 WL 7094023, at *3 (M.D. Fla. Dec. 6, 2016) (citations omitted) (striking "bona fide error" defense that simply parroted the language of 15 U.S.C. 1692k(c) as insufficient under Rule 8(c)); Bartholomew v. Pollack & Rosen, P.A., No. 2:15-cv-135-FtM-29DNF, 2015 WL 3852944, at *2 (M.D. Fla. June 22, 2015) (citation omitted) (striking boilerplate bona fide error defense); Blum v. Lawent, No. 02 C 5596, 2004 WL 2191612, at *4 (N.D. Ill. Sept. 27, 2004) (citations omitted) (finding defendant's affirmative defenses that "did not expressly mention § 1692k(c) or its elements" did not properly plead the affirmative defense of bona fide error). Indeed, as Pritchett points out, [Doc. 42 at 12-13; Doc. 34 at 17-18], CBS pled seventeen separate defenses in its amended answer, see generally, [Doc. 14], none of which gave Pritchett "adequate notice of the [bona fide error] defense," Adams v. JP Morgan Chase Bank N.A., No. 3:11-cv-337-J-37MCR, 2011 WL 2938467, at *3 (M.D. Fla. July 21, 2011).[9] Rather, CBS's tenth

[9] The parties dispute whether Federal Rule of Civil Procedure 9(b)'s heightened pleading standard applies to the defense of bona fide error. See [Doc.

defense appears to be an attempt to assert a good faith defense, not a bona fide error defense. See Jacobson v. Persolve, LLC, Case No.: 14-CV-00735-LHK, 2014 WL 4090809, at *8-9 (N.D. Cal. Aug. 19, 2014) (discussing different elements of bona fide error defense and good faith defense); Perez v. Gordon & Wong Law Grp., P.C., No. 11-CV-03323-LHK, 2012 WL 1029425, at *10 (N.D. Cal. Mar. 26, 2012) (declining to strike good faith defense, among other defenses asserted in addition to bona fide error defense, because "the universe of appropriate defenses available to a defendant in an FDCPA case is not limited to those expressly enumerated in § 1692k"). But see Gamby v. Equifax Info. Servs. LLC, 462 Fed. App'x 552, 556-57 (6th Cir. 2012) (unpublished) (citations omitted) (noting that "under the FDCPA, outside of the relatively narrow bona-fide error exception, a good-faith error still gives rise to liability").

Even though CBS failed to comply with Rule 8(c) of the Federal Rules of Civil Procedure, it does not necessarily mean that the bona fide error defense was waived. That is, "although Rule 8(c) requires that a [bona fide error] defense be raised as an affirmative defense," the Eleventh Circuit "has noted that the purpose of Rule 8(c) is to give the opposing party notice of the affirmative defense and a chance to rebut

---

34 at 18-19; Doc. 36 at 13-19; Doc. 41 at 15-17; Doc. 42 at 12-13]. However, as the Court finds that CBS has failed to meet Rule 8(c)'s pleading standard, it need not determine whether Rule 9(b)'s heightened standard applies.

it," and, thus, "if a plaintiff receives notice of an affirmative defense by some means other than the pleadings, the defendant's failure to comply with Rule 8(c) does not cause the plaintiff any prejudice." Navarro v. Santos Furniture Custom Design, Inc., 372 F. App'x 24, 27 (11th Cir. 2010) (per curiam) (unpublished) (internal marks omitted) (quoting Grant v. Preferred Research, Inc., 885 F.2d 795, 797 (11th Cir. 1989)).

Pritchett contends that she did not receive notice of CBS's intention to raise the defense of bona fide error until CBS asserted it in its motion for summary judgment and that allowing "CBS to raise that defense at this stage of the case would be highly prejudicial to [her] given that discovery has now closed and [she] would be at a disadvantage having been unable to explore the factual basis for the alleged defense." [Doc. 36 at 12 (citation omitted)]; see also [Doc. 34 at 17 n.6]. In response, CBS does not point to any means by which Pritchett was given notice of the bona fide error defense other than contending that it was asserted as the tenth defense in its amended answer. See [Doc. 38 at 11-12; Doc. 41 at 16-17]; see also Bergquist, 197 F. App'x at 814 (finding plaintiff had notice of the affirmative defenses as defendant's "Rule 11 letter clearly and explicitly sets forth [d]efendant's intention to utilize the [] defenses"); Puglisi v. Debt Recovery Sols., LLC, 822 F. Supp. 2d 218, 227 n.9 (E.D.N.Y. 2011) (finding plaintiff was not prejudiced by defendant's raising

of the bona fide error defense in its cross-motion for summary judgment as "the plaintiff ha[d] been on notice about the defense since the Court's [earlier] Memorandum and Order, which explicitly referenced the bona fide error defense as a factual question yet to be determined"). Instead, CBS argues that because Pritchett "filed an FDCPA action to which there is only one statutorily prescribed defense, bona fide error," she "should necessarily have been on alert that such a defense was likely[.]" [Doc. 38 at 12]; see also [Doc. 41 at 17]. This argument is unpersuasive and fails to show how Pritchett was on notice of CBS's defense prior to the filing of its motion for summary judgment. Because CBS did not plead the affirmative defense of bona fide error among the seventeen separate defenses asserted in its amended answer and it has not otherwise shown that Pritchett received notice of such defense and would thereby not suffer prejudice, the Court finds that CBS has waived this affirmative defense. See Quinones v. United States, No. 8:14-cv-164-T-36MAP, 2015 WL 3948420, at *5 (M.D. Fla. June 29, 2015) (holding defendant waived affirmative defense when it was asserted after the close of discovery and plaintiff would suffer unfair prejudice as a result of the defendant's belated assertion); see also Keybank Nat'l Ass'n v. Hamrick, 576 F. App'x 884, 888 (11th Cir. 2014) (per curiam) (unpublished) (quoting Easterwood v. CSX Transp., Inc., 933 F.2d 1548, 1551 (11th Cir. 1991)) ("When an affirmative defense initially was

raised pursuant to a summary judgment motion, [the Eleventh Circuit] determined that the defendant's 'failure to specifically plead the defense in its answer or amended answer result[ed] in the waiver of this defense.'").[10]

### 3. *Merits of Pritchett's FDCPA Claim*

"Congress enacted the [FDCPA] to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." Acosta v. Campbell, 309 F. App'x 315, 319 (11th Cir. 2009) (per curiam) (unpublished) (citation and internal marks omitted). "To prove [her] FDCPA claims, [Pritchett] must establish the following elements: (1) [she] has been the object of

[10] The Court recognizes that in some cases raising an affirmative defense for the first time in a motion for summary judgment is sufficient notice to the opposing party, see Kennan v. Dow Chem. Co., 717 F. Supp. 799, 809-10 (M.D. Fla. 1989 (finding defendant did not waive affirmative defense when raised for the first time in motion for summary judgment as "the availability of the [] defense in this case [was] a question of law and [] there [were] no factual issues on which plaintiff could conduct discovery"); see also Mid-Continent Cas. Co., 552 F. Supp. 2d at 1316 (same); however, whether the actions of CBS were the result of a bona fide error, thus barring Pritchett's FDCPA claim, is a factual issue that would require discovery for Pritchett to rebut, see Niven v. Nat'l Action Fin. Servs., Inc., No. 8:07-cv-1326-T-27TBM, 2008 WL 4190961, at *3 (M.D. Fla. Sept. 10, 2008) (citation omitted) (noting that "whether the error was bona fide [is a] classic issue[] of fact"); see also Quinones, 2015 WL 3948420, at *5 (finding plaintiffs were prejudiced when notice of an intention to raise an affirmative defense was given to them "only *after* the discovery deadline had already passed," thereby barring them from "conducting discovery regarding the defense").

collection activity arising from consumer debt, (2) [CBS] is a debt collector as defined by the FDCPA, and (3) [CBS] has engaged in an act or omission prohibited by the FDCPA." Hamilton v. Avectus Health Care Sols., LLC, Case No. 5:13-cv-01967-SGC, 2015 WL 5693610, at *4 (N.D. Ala. Sept. 29, 2015) (citation and internal marks omitted); see also Frazier v. Absolute Collection Serv., Inc., 767 F. Supp. 2d 1354, 1363 (N.D. Ga. 2011), adopted at 1359 (citations omitted); Buckley v. Bayrock Mortg. Corp., Civil Action File No. 1:09-CV-1387-TWT, 2010 WL 476673, at *6 (N.D. Ga. Feb. 5, 2010), adopted at *1 (citation omitted).

CBS "specifically contests the third element," asserting that it has not engaged in any act prohibited by the FDCPA. [Doc. 41 at 5-6]. Pritchett alleges that CBS's filing of a proof of claim in her 2015 bankruptcy case for a debt that was previously discharged violates §§ 1692e(2), 1692e(5), and 1692f of the FDCPA. [Doc. 36 at 19; Doc. 1 at 17 ¶ 91].[11] Pritchett relies on the Eleventh Circuit's decisions in Crawford,

---

[11] In her response opposing CBS's motion for summary judgment and in her own motion for summary judgment, Pritchett asserts that the proof of claim was time-barred. See [Doc. 36 at 19]; see also [Doc. 34 at 11-12]. However, as CBS points out, this is "the first time, [Pritchett] raises a violation of the statute of limitations as a basis for her [FDCPA] claim." [Doc. 38 at 6; Doc. 41 at 17]; see also [Docs. 1 & 19]. "A plaintiff may not amend her complaint through argument in a brief opposing summary judgment or one advocating summary judgment. " Am. Fed'n of State, Cty. & Mun. Emps. Council 79 v. Scott, 717 F.3d 851, 863 (11th Cir. 2013) (internal marks omitted) (quoting Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) (per curiam)). In her complaint, Pritchett bases her FDCPA claim upon CBS's filing of a proof of claim for a debt that was previously discharged. See [Doc. 1 at 5 ¶ 23, 10 ¶¶ 49, 51]. In her briefs, she makes an additional argument as

758 F.3d at 1254, and Johnson v. Midland Funding, LLC, 823 F.3d 1334 (11th Cir. 2016), to support her claims under the FDCPA. [Doc. 36 at 19-20].

Section 1692e of the FDCPA prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.[12] Section 1692f of the FDCPA prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. The Eleventh Circuit has "adopted a 'least-sophisticated consumer' standard to evaluate whether a debt collector's conduct is

---

a basis for her FDCPA claim–that the proof of claim filed by CBS was time barred. See [Doc. 36 at 19]; see also [Doc. 34 at 11-12]. Although Pritchett does "not assert an *entirely* new claim in [her] responsive brief [and motion for summary judgment]," Eleventh Circuit precedent "bars [her] from raising that new theory at this stage of the proceedings." San Francisco Residence Club, Inc. v. Baswell-Guthrie, 897 F. Supp. 2d 1122, 1204 (N.D. Ala. 2012). Thus, Pritchett's "new theor[y] [is] not properly before the Court." Cruz v. Advance Stores Co., 842 F. Supp. 2d 1356, 1360 (S.D. Fla. 2012) (declining to consider new theories of negligence raised for the first time in response brief). Pritchett nevertheless argues that she "is under no obligation to draw CBS a roadmap" and that she put CBS on notice that her claim was based on its filing of a proof of claim and the claim reveals that it was untimely. [Doc. 42 at 9]. However, "[l]iberal pleading does not require that, at the summary judgment stage, [CBS] must infer all possible claims that could arise out of facts set forth in [Pritchett's] complaint." Gilmour, 382 F.3d at 1315. Accordingly, Pritchett's argument is unavailing.

[12] "Section 1692e(2)(A) prohibits 'false representation of . . . the character, amount, or legal status of any debt,'" Hepsen v. Resurgent Capital Servs., LP, 383 F. App'x 877, 881 (11th Cir. 2010) (per curiam) (unpublished) (quoting 15 U.S.C. § 1692e(2)(A)), and "[s]ection 1692e(5) proscribes threats to take action that cannot legally be taken," Ferguson v. Credit Mgmt. Control, Inc., 140 F. Supp. 2d 1293, 1299 (M.D. Fla. 2001) (citing 15 U.S.C. § 1692e(5)).

‘deceptive,’ ‘misleading,’ ‘unconscionable,’ or ‘unfair’ under [§§ 1692e and 1692f].” Crawford, 758 F.3d at 1258 (citations omitted); see also LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1193-94 (11th Cir. 2010) (per curiam) (citation omitted); Orr v. Westport Recovery Corp., 941 F. Supp. 2d 1377, 1380 (N.D. Ga. 2013) (citation omitted). “The inquiry is not whether the particular plaintiff-consumer was deceived or mislead; instead, the question is whether the least sophisticated consumer would have been deceived by the debt collector’s conduct.” Crawford, 758 F.3d at 1258 (internal marks omitted) (quoting Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1177 n.11 (11th Cir. 1985)). “The ‘least-sophisticated consumer’ standard takes into account that consumer-protection laws are ‘not made for the protection of experts, but for the public–that vast multitude which includes the ignorant, the unthinking, and the credulous.’” Id. at 1258-59 (quoting Jeter, 760 F.2d at 1172-73); see also Orr, 941 F. Supp. 2d at 1380 (citation omitted) (“In applying this standard to determine whether a complaint states a plausible claim for relief, the court can presume that ‘the least sophisticated consumer’ possesses ‘a rudimentary amount of information about the world and a willingness to read a collection notice with some care.’”). “‘However, the test has an objective component in that while protecting naive consumers, the standard also prevents liability for bizarre or

idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness.'" Crawford, 758 F.3d at 1259 (quoting LeBlanc, 601 F.3d at 1194).

In Crawford, a creditor filed a time-barred proof of claim after the plaintiff petitioned for Chapter 13 protection. Id. The Eleventh Circuit noted that "[f]ederal circuit and district courts have uniformly held that a debt collector's threatening to sue on a time-barred debt and/or filing a time-barred suit in state court to recover that debt violates §§ 1692e and 1692f." Id. at 1259-60 (footnote omitted) (collecting cases). The Eleventh Circuit reasoned that "a debt collector's filing of a time-barred proof of claim creates the misleading impression to the debtor that the debt collector can legally enforce the debt," similar to the filing of a time-barred suit. Id. at 1261. The Eleventh Circuit further reasoned that the "'least sophisticated' Chapter 13 debtor may be unaware that a claim is time barred and unenforceable and thus fail to object to such claim," that given "the Bankruptcy Code's automatic allowance provision, the otherwise unenforceable time-barred debt will be paid from the debtor's future wages as part of his Chapter 13 repayment plan," that such "a distribution of funds to debt collectors with time-barred claims then necessarily reduces the payments to other legitimate creditors with enforceable claims," and that "filing objections to time-barred claims consumes energy and resources in a debtor's bankruptcy case, just as filing a limitations defense does in state court." Id.

The Eleventh Circuit thus concluded that the creditor's "filing of a time-barred proof of claim against [the debtor] in bankruptcy was unfair, unconscionable, deceptive, and misleading within the broad scope of § 1692e and § 1692f." Id. (internal marks omitted).

CBS filed the proof of claim at issue in Pritchett's 2015 bankruptcy for a debt that had been discharged in her 2012 bankruptcy. CBS argues that Crawford should be read narrowly, limiting the opinion to proofs of claim filed on debts barred by a state statute of limitations. [Doc. 29-5 at 17].[13] While the proof of claim filed in Crawford was for a time-barred debt, the Eleventh Circuit's reasoning in Crawford, particularly in light of its subsequent ruling in Johnson, does not support CBS's narrow reading of the decision, but rather, compels the Court to conclude that the filing of a poof of claim for a discharged debt, like a debt barred by a state statute of limitations, is actionable under the FDCPA in this circuit.

First, the Crawford decision did not explicitly confine its holding to debts barred by a state statute of limitations, as CBS contends. In fact, the Eleventh Circuit actually considered "whether a proof of claim to collect a stale debt in Chapter 13

[13] CBS asserts that "[o]ther courts have [so] limited the opinion," [Doc. 29-5 at 17-18 (citations omitted)]; however, the cases cited by CBS do not support such an assertion, see Slaugher v. LVNV Funding, LLC, No. 2:14-MC-2050-KOB, 2015 WL 627954, at *2-3 (N.D. Ala. Feb. 12, 2015); In re Hanson, 525 B.R. 791, 796-97 (Bankr. M.D. Fla. 2015).

bankruptcy violates the [FDCPA]." Crawford, 758 F.3d at 1256 (citation omitted). CBS describes Pritchett's claim in this case as resting on "CBS's allegedly filing a stale proof of claim." [Doc. 41 at 7]. To the extent CBS has accurately characterized Pritchett's claim, the Eleventh Circuit specifically ruled in Crawford that the defendant "violated the FDCPA by filing a stale claim in bankruptcy court." 758 F.3d at 1262 (footnote omitted).

In addition, even though a distinction may be drawn between the filing of a proof of claim for a time-barred debt, as opposed to a discharged debt, that distinction does not support the narrow reading of Crawford advanced by CBS. Indeed, considering the reasoning of courts in other circuits that have distinguished the Crawford decision, the fact that the Eleventh Circuit concluded that the filing of a mere time-barred proof of claim violates the FDCPA indicates that the filing of a proof of claim for a discharged debt similarly violates the FDCPA. For example, in In re Dubois, 834 F.3d 522 (4th Cir. 2016), the Fourth Circuit rejected the reasoning in Crawford and concluded that "filing a proof of claim in a Chapter 13 bankruptcy based on a debt that is time-barred does not violate the FDCPA when the statute of limitations does not extinguish the debt." 834 F.3d at 533 (footnote omitted). The Fourth Circuit explained that, under Maryland law, which was applicable in that case, the statute of limitations "does not operate to extinguish [a] debt, but to bar the

remedy." Id. at 529 (alteration in original) (citations and internal marks omitted). "Thus, under Maryland law, a time-barred debt still constitutes a 'right to payment' and therefore a 'claim' that the holder may file under the Bankruptcy Code." Id. (footnote omitted). The Fourth Circuit reasoned that "while the Bankruptcy Code provides that time-barred debts are to be disallowed, the Code nowhere suggests that such debts are not to be filed in the first place." Id. at 530 (citation omitted). Accordingly, the Fourth Circuit concluded that "when the statute of limitations does not extinguish debts, a time-barred debt falls within the Bankruptcy Code's broad definition of a claim," and based on several considerations within the bankruptcy context,[14] the Fourth Circuit saw no reason to attach FDCPA liability to a claim filed on a time-barred, but not extinguished, debt. Id. at 530, 532-33.

Unlike the time-barred debt at issue in In re Dubois, a discharged debt is extinguished and unenforceable. See In re McLean, 794 F.3d 1313, 1321 (11th Cir. 2015) (citation omitted) (noting the effect of a discharge is a "total prohibition on debt collection efforts" and a discharge, in effect, "extinguishes the debt"). Thus, filing a proof of claim for a discharged debt presents even stronger grounds for

[14] The Fourth Circuit described additional protections and potential benefits available to a debtor in bankruptcy when a proof of claim for a time-barred debt is filed, including that "a claim based on a time-barred debt will be objected to by the trustee, disallowed, and ultimately discharged, thereby stopping the creditor from engaging in any further collection activity." In re Dubois, 834 F.3d at 531 (footnote omitted).

finding a violation of the FDCPA under the rationale of Crawford and is distinguishable from the Fourth Circuit's ruling in In re Dubois which was explicitly limited to filing a proof of claim on a time-barred, but not extinguished, debt. In re Dubois, 834 F.3d at 530, 532-33. In other words, since the Eleventh Circuit ruled in Crawford that the filing of a proof of claim for a stale debt violated the FDCPA, then the filing of a proof of claim for a discharged debt that has been extinguished similarly would violate the FDCPA under the Eleventh Circuit's reasoning that "a debt collector's filing of a time-barred proof of claim creates the misleading impression to the debtor that the debt collector can legally enforce the debt." Crawford, 758 F.3d at 1261.

Moreover, the unique considerations of the bankruptcy context and the effect of a discharge does not alter this conclusion since, in Johnson, the Eleventh Circuit held that the Bankruptcy Code does not preclude an FDCPA claim because the FDCPA and the Code may be read to coexist. 823 F.3d at 1342. The Eleventh Circuit explained that its holding "does not infringe any creditor's ability to file a claim in a debtor's bankruptcy proceeding," but "when a debt collector, as specifically defined by the FDCPA, files a proof of claim for a debt that the debt collector knows to be time-barred, that creditor must still face the consequences imposed by the FDCPA for a 'misleading' or 'unfair' claim." Id. at 1341. The same is true when a

debt collector files a proof of claim for a discharged debt under the Eleventh Circuit's reasoning in Crawford that the filing of a time-barred proof of claim "was 'unfair,' 'unconscionable,' 'deceptive,' and 'misleading' within the broad scope of § 1692e and § 1692f." 758 F.3d at 1261.[15]

Although detection of the filing of a proof of claim for a time-barred debt may not be as readily apparent to the debtor as a proof of claim for a discharged debt, the filing of a proof of claim for a discharged debt may similarly "create[] the misleading impression to the debtor that the debt collector can legally enforce the debt." Crawford, 758 F.3d at 1261. Other than its own conclusory assertion, CBS has cited no authority to support its contention that the least sophisticated consumer could not be deceived by a creditor filing a proof of claim for a discharged debt in her bankruptcy case. [Doc. 29-5 at 17].[16] Thus, a genuine dispute exists as to whether

---

[15] CBS complains that "Crawford has created a problem where none previously existed," [Doc. 41 at 10], resulting in "the use of the FDCPA as a sword for the sole benefit of attorneys rather than a consumer shield," [id. at 23], but even if this is so, this Court must adhere to the Eleventh Circuit precedent rather than contrary rulings of other circuits.

[16] CBS does cite In re McMillen, 440 B.R. 907 (Bankr. N.D. Ga. 2010), [Doc. 41 at 13-14], but it was decided before Crawford and involved the filing of duplicative proofs of claim on the same debt, not a proof of claim on a discharged debt, see In re McMillin, 440 B.R. at 913-14. CBS also claims that Pritchett was not deceived or misled because she was aware that the debt had already been discharged. [Doc. 41 at 14 (citation omitted)]. "The inquiry is not whether . . . [Pritchett] was deceived or misled," but rather, "whether the least sophisticated consumer would have been deceived by [CBS's] conduct." Crawford, 758 F.3d at 1258 (citation and internal

the filing of a proof of claim for a discharged debt would be deceptive and misleading from the perspective of the least sophisticated consumer, and where "the parties reasonably disagree on the proper inferences that can be drawn from [CBS's proof of claim], resolution is for the trier of fact–not for the [C]ourt on summary judgment." See Prindle v. Carrington Mortg. Servs., LLC, Case No. 3:13-cv-1349-J-34PDB, 2016 WL 4369424, at *15-16 (M.D. Fla. Aug. 16, 2016) (quoting LeBlanc, 601 F.3d at 1197) (denying defendant's motion to dismiss as "a genuine dispute exist[ed] as to whether the . . . [s]tatement was false, deceptive, or misleading from the perspective of the least-sophisticated consumer"); Beeders v. Gulf Coast Collection Bureau, Inc., No. 8:09-cv-00458-EAK-AEP, 2010 WL 2696404, at *5 (M.D. Fla. July 6, 2010), aff'd, 432 F. App'x 918 (11th Cir. 2011) (per curiam) (unpublished) (denying parties' cross-motions for summary judgment as whether least sophisticated consumer would be misled "was clearly a triable issue of material fact properly submitted to a jury"); Pescatrice v. Orovitz, 539 F. Supp. 2d 1375, 1381 (S.D. Fla. 2008) (citation omitted) (denying both sides' motions for summary judgment as the court "[could ]not conclude as a matter of law, that the letter and proposed

marks omitted); see also Battle v. Gladstone Law Grp., P.A., 951 F. Supp. 2d 1310, 1315 (S.D. Fla. 2013) (citation omitted) ("The standard for evaluating violations of the FDCPA is not whether the individual plaintiff was confused or deceived but whether 'the least sophisticated consumer would be confused or deceived' by [d]efendants' actions."). Thus, CBS's argument is without merit.

stipulation, taken together, are not deceptive under [§§] 1692e or 1692f of the FDCPA to the 'least sophisticated consumer'" as the "issue of whether [they] are deceptive is a material issue of disputed fact for the jury, as factfinder, to resolve").[17]

Moreover, with respect to Pritchett's motion for summary judgment, there is a genuine dispute as to whether CBS knew the debt had been discharged when it filed the proof of claim in the 2015 bankruptcy. See Johnson, 823 F.3d at 1339 (emphasis added) (citing Crawford, 758 F.3d at 1261) ("[A] debt collector violates the FDCPA by filing a *knowingly* time-barred proof of claim in a Chapter 13 bankruptcy proceeding."). While Pritchett asserts that CBS had knowledge that the debt had been discharged because it filed the proof of claim on Seventh Avenue's behalf in the 2012 bankruptcy and was served with notice of the discharge, see [Doc. 35 at 20 ¶ 9; Doc. 29-4 at 31-33; Doc. 1-1]; see also [Doc. 35 at 19 ¶ 6; Doc. 39 at 4 ¶ 6; Doc. 1-3 at 3], CBS disputes that it knowingly filed the discharged proof of claim, [Doc. 29-5 at 12-13; Doc. 41 at 6-7, 12]. CBS points out that the debt owed to Seventh Avenue continued to appear on Pritchett's credit report, despite the discharge and the

[17] CBS cites several cases from other circuits to support its position that the Bankruptcy Code precludes the filing of an FDCPA claim under these circumstances. See [Doc. 29-5 at 18; Doc. 41 at 11-13]. However, as CBS expressly acknowledges, [Doc. 29-5 at 18], the Eleventh Circuit has held otherwise, see Johnson, 823 F.3d at 1342 ("The Code does not preclude an FDCPA claim in the bankruptcy context."). Obviously, the Court is bound to follow Eleventh Circuit precedent and must reject CBS's arguments to do otherwise.

closure of her 2012 bankruptcy case, [Doc. 29-1 at 87-88 pp. 86-87, 90-91 pp. 89-90; Doc. 1 at 7 ¶¶ 32-33], and Pritchett failed to disclose her 2012 bankruptcy on her 2015 petition and even scheduled the discharged debt but failed to indicate the debt was disputed, [Doc. 29-3 at 10, 26; Doc. 29-1 at 92 p. 91]; see also In re Dubois, 834 F.3d at 532 (noting that plaintiffs conceded that "scheduling a debt as undisputed is an 'invitation to participate,'" and "a debt collector would not violate the FDCPA by filing a proof of claim on a time-barred debt that the debtor had scheduled and did not designate as 'disputed'"). Thus, for this additional reason, the parties' cross-motions are due to be denied.

**4. *Damages***

CBS asserts Pritchett has not suffered any actual damages as a result of CBS's alleged FDCPA violation as evidenced by her discovery responses and deposition testimony. [Doc. 29-5 at 2, 11; Doc. 38 at 3, 13; Doc. 41 at 8-10]. Section § 1692k of the FDCPA provides, in relevant part:

> [A]ny debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of--
>
> > (1) any actual damage sustained by such person as a result of such failure;
> >
> > (2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; or

. . . .

> (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

15 U.S.C. § 1692k(a). Pritchett alleges in her complaint that she has "suffered actual damages, including without limitation mail expense, mileage expense, lost time from work incurred after her attempts to halt [CBS's] illegal collection efforts failed, frustration and aggravation, emotional distress and humiliation." [Doc. 1 at 17-18 ¶ 92]. She further alleges that she is "also entitled to recover from [CBS] $1,000 in statutory damages, reasonable attorney's fees, and costs." [Id. at 18 ¶ 93].

However, in her response to CBS's interrogatories, Pritchett stated that she was "withdrawing any claim for actual damages as it pertains to work." [Doc. 29-4 at 13]. In addition, Pritchett testified that she was not unable to work as a result of CBS's filing of the proof of claim as she is "retired." [Doc. 29-1 at 105-06 pp. 104-05]. As to her claim for expenses incurred in her attempt to halt CBS's illegal collection of the discharged debt, Pritchett testified that she made no such attempts prior to filing this lawsuit. [Id. at 94-95 pp. 93-94]; see also [Doc. 29-6 at 9 ¶ 35; Doc. 35 at 11-12 ¶ 35]. With regard to her claim for emotional distress, Pritchett stated in her response to multiple interrogatories that she was "withdrawing any claim for damages as it pertains to emotional distress, including humiliation, frustration, or

aggravation." [Doc. 29-4 at 15, 21, 23-25]. In fact, she specifically stated that she was "withdrawing her claim against [CBS] for actual damages" and that she was seeking only "statutory damages and attorneys' fees." [Id. at 19].[18] Thus, CBS's motion for summary judgment with respect to actual damages is due to be granted. Accordingly, it is **RECOMMENDED** that CBS's motion for summary judgment with respect to Pritchett's FDCPA claim be **GRANTED IN PART** and **DENIED IN PART** and that Pritchett's motion for summary judgment be **DENIED**.

[18] Pritchett does not dispute that she withdrew her claim for actual damages in her responses to CBS's interrogatories. However, she claims that she "modified and clarified th[ose] reponse[s] in her subsequent deposition." [Doc. 36 at 8]. In support of her argument, she points to her testimony that she "got angry" and "really mad" after she found out that CBS filed a proof of claim in her 2015 bankruptcy and that she was "just aggravated with the whole thing" and humiliated. [Doc. 29-1 at 99 p. 98, 104 p. 103, 106 p. 105]; see also [id. at 105 p. 104, 108 p. 107]. However, the Court agrees with CBS that Pritchett's argument "is belied by her actual failure to amend her response[s]," [Doc. 38 at 13], which she was required to do by Rule 26(e) of the Federal Rules of Civil Procedure, see Fed. R. Civ. P. 26(e) (A party "who has responded to an interrogatory . . . []must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]"). Moreover, Pritchett fails to explain how her testimony that she was angry and mad otherwise notifies CBS of her intention to proceed on her claim for actual damages. Thus, the Court will not consider this information as evidence on the pending motions for summary judgment. See Fed. R. Civ. P. 37(c)(1).

B. <u>Violation of Bankruptcy Discharge Injunction</u>

Pritchett alleges that CBS "willfully violated 11 U.S.C. § 524(a)(2) by attempting to collect a discharged debt by filing a Proof of Claim in the 2015 [bankruptcy]" and that CBS's "actions and omissions were willful, rendering [it] liable for civil contempt sanctions." [Doc. 1 at 17 ¶¶ 88-89]. CBS argues that this claim should be dismissed because the "only court with the power to enforce an injunction is the court that issued the injunction, the Bankruptcy Court for the Northern District of Georgia," and alternatively that it "is entitled to judgment as a matter of law as civil penalties are not warranted or allowable in this context." [Doc. 29-5 at 19].

"The effect of a bankruptcy discharge is specified in 11 U.S.C. § 524." <u>Pereira v. First N. Am. Nat'l Bank</u>, 223 B.R. 28, 30 (N.D. Ga. 1998). "This section, which is designed to protect a debtor only from in personam liability," provides, in relevant part, that "a discharge 'operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.'" <u>Id.</u> (citation omitted) (quoting 11 U.S.C. § 524(a)(2)). The Eleventh Circuit has "interpreted § 524(a)(2) expansively, holding that it prohibits any action that has the effect of pressuring a debtor to repay a discharged debt, even

if the means are indirect." Jones v. CitiMortgage, Inc., No. 15-14853, 2016 WL 6610208, at *6 (11th Cir. Nov. 9, 2016) (per curiam) (unpublished) (citing In re McLean, 794 F.3d at 1320). "A debtor who believes that the discharge injunction has been violated may file a contempt action with the bankruptcy court that issued the discharge injunction, not with another court." Id. (citing McLean, 794 F.3d at 1319; Alderwoods Grp., Inc. v. Garcia, 682 F.3d 958, 970-71 (11th Cir. 2012)). "That is because the court that issued the discharge injunction is the court that alone possesse[s] the power to enforce compliance with the discharge injunction," and indeed, "[o]ther courts are without jurisdiction to do so." Id. (first alteration in original) (internal marks omitted) (quoting McLean, 794 F.3d at 1319; Alderwoods Grp., Inc., 682 F.3d at 971)); see also Leahy-Fernandez v. Bayview Loan Servicing, LLC, 159 F. Supp. 3d 1294, 1306-07 (M.D. Fla. 2016) (citations omitted).

"Here, the court that issued the discharge injunction was the United States Bankruptcy Court for the Northern District of Georgia, so that court alone possessed the power to enforce compliance with the discharge injunction and 'punish contempt of that order.'" Jones, 2016 WL 6610208, at *6 (citation omitted); see also Alderwoods Grp., Inc., 682 F.3d at 970-71 (footnote and citations omitted) ("[T]he court that issued the injunctive order alone possesses the power to enforce compliance with and punish contempt of that order. Other courts are without

jurisdiction to do so."). "Therefore, if [CBS] violated the discharge injunction, the bankruptcy court had the power to sanction [it] for attempting to pressure [Pritchett] to pay the discharged debt personally." Jones, 2016 WL 6610208, at *6 (citation omitted). However, Pritchett filed her complaint in the district court, and this Court "lack[s] jurisdiction to entertain alleged violations of an order it did not issue." Id. (footnote and citation omitted); see also Yaghobi v. Robinson, 145 F. App'x 697, 699 (2d Cir. 2005) (unpublished) (citations and internal marks omitted) ("Where, as in this case, a debtor thinks a creditor is acting in violation of a bankruptcy court's § 524 discharge order, relief is properly sought in the first instance from the bankruptcy court rather than in the district court[.]"); McCamis v. Servis One, Inc., CASE NO: 8:16-CV-1130-T-30AEP, 2016 WL 4063403, at *5 (M.D. Fla. July 29, 2016) (holding that plaintiff "must institute contempt proceedings [under 11 U.S.C. § 105(a) for violation of plaintiff's discharge injunction] in the bankruptcy court"); Church v. Accretive Health, Inc., Civil Action No. 14-0057-WS-B, 2014 WL 7184340, at *11 (S.D. Ala. Dec. 16, 2014) ("[T]he Court concludes that, in the interests of efficiency and bankruptcy equities, any contempt motion that [plaintiff] might file under §§ 105(a) and 524 should be directed in the first instance to the bankruptcy judge that issued the discharge order, rather than to the [district court]."); Welch v. Target Nat'l Bank, No. 2:08-cv-705-FtM-29SPC, 2009 WL 1659708, at *2 (M.D. Fla.

June 15, 2009) (citations omitted) ("[T]here is no private cause of action which may be brought in the District Court for an alleged breach of the Bankruptcy Court discharge injunction.").[19] Accordingly, it is **RECOMMENDED** that this count be **REFERRED** to the United States Bankruptcy Court for the Northern District of Georgia. See Jones, 2016 WL 6610208, at *7 (alteration in original) (quoting 28 U.S.C. § 157(a)) ("'Each district court may provide that any or all . . . proceedings arising

[19] Pritchett asserts that this Court has jurisdiction to hear and determine her claim for violation of the bankruptcy injunction. See [Doc. 36 at 6-8]. In particular, she argues that "the Bankruptcy Court is a division of this Court," [id. at 6 (citing LR 83.7A, NDGa.)], and that "the Eleventh Circuit recently addressed this exact issue in [McLean]," [id. at 7 (citation omitted)]; see also [Doc. 34 at 15]. In McLean, the Eleventh Circuit found that the "bankruptcy court [] had jurisdiction to entertain a motion for contempt in the [plaintiffs'] second bankruptcy case for a violation of the discharge injunction from their first." 794 F.3d at 1319-20. Although Pritchett does not cite any cases to support her assertion that McLean gives the district court jurisdiction over the bankruptcy court's injunction, the Court recognizes that at least one district court has so concluded. See Caldwell v. Redstone Fed. Credit Union, Case No.: 2:15-cv-01923-JHE, 2016 WL 4702821, at *8-9 & n.7 (N.D. Ala. Sept. 8, 2016) (noting that while McLean on its face was "limited to state only the bankruptcy court has the power to enforce the order," the "rationale . . . also supports the conclusion the district court also falls within the meaning of 'court' and may, if appropriate, withdraw the reference on contempt proceedings"). However, in Jones, the Eleventh Circuit rejected Pritchett's contention as it reversed the district court's decision reaching the merits of plaintiff's claim for violation of a bankruptcy discharge injunction and found "the district court . . . lacked jurisdiction to entertain alleged violations of an order" that was issued by the United States Bankruptcy Court for the Northern District of Georgia. 2016 WL 6610208, at *6 (footnote and citation omitted). Thus, Pritchett's argument is without merit.

under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.'").[20]

## IV. CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that CBS's motion for summary judgment, [Doc. 29], be **GRANTED IN PART** and **DENIED IN PART**, that Pritchett's motion for summary judgment, [Doc. 32], be **DENIED**, and that Pritchett's claim for violation of the bankruptcy injunction be **REFERRED** to the United States Bankruptcy Court for the Northern District of Georgia.

**IT IS SO RECOMMENDED**, this 1st day of February, 2017.

Russell G. Vineyard

RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE

---

[20] "Because the matter can only be resolved in the [United States] Bankruptcy Court [for the Northern District of Georgia], the Court need not opine on whether the alleged conduct violated the discharge injunction [or whether civil contempt is an appropriate remedy]." Welch, 2009 WL 1659708, at *2. Indeed, "the Court expresses no opinion whether [CBS's] alleged actions would violate [Pritchett's] bankruptcy discharge and leaves such a determination to the exclusive discretion of the Bankruptcy Court." Helman v. Udren Law Offices, P.C., 85 F. Supp. 3d 1319, 1330 (S.D. Fla. 2014).